*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF ROBERT J. ROMIG, by BOBBIE JO
KOOMAN, Personal Representative, and TERRY
ROMIG,

        Plaintiffs-Appellants,

v

BOULDER BLUFF CONDOMINIUMS UNITS 73-
123, 125-146, INC., doing business as BOULDER
BLUFF ESTATES CONDOMINIUM
ASSOCIATION, and GEROW MANAGEMENT
COMPANY, INC.,

        Defendants-Appellees.

FOR PUBLICATION
October 15, 2020
9:05 a.m.

No. 347653
Ottawa Circuit Court
LC No. 18-005518-NO

---

ESTATE OF ROBERT J. ROMIG, by BOBBIE JO
KOOMAN, Personal Representative, and TERRY
ROMIG,

        Plaintiffs-Appellants,

v

BOULDER BLUFF CONDOMINIUMS UNITS 73-
123, 125-146, INC., doing business as BOULDER
BLUFF ESTATES CONDOMINIUM
ASSOCIATION, "BOULDER BLUFF ESTATES
CONDOMINIUM ASSOCIATION," and GEROW
MANAGEMENT COMPANY, INC.,

        Defendants-Appellees.

No. 348254
Ottawa Circuit Court
LC No. 18-005518-NO

---

Before: LETICA, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

-1-

In Docket No. 347653, plaintiffs, Bobbie Jo Kooman, as personal representative for the Estate of Robert J. Romig, and Terry Romig, appeal by leave granted[1] the trial court's order granting partial summary disposition in favor of defendant Gerow Management Company, Inc., (Gerow) pursuant to MCR 2.116(C)(10). In Docket No. 348254, plaintiffs appeal by leave granted[2] the trial court's order granting partial summary disposition in favor of defendants Boulder Bluff Condominiums, Units 73-123, 125-146, Inc., doing business as Boulder Bluff Estates Condominium Association, and Boulder Bluff Estates Condominium Association (the Association),[3] pursuant to MCR 2.116(C)(8).[4]

We conclude that the Association's denial of the initial request for installation of a railing as an accommodation to assist a disabled person did not constitute discrimination in a "real estate transaction" as that phrase in defined in the Persons with Disabilities Civil Rights Acts, (PWDCRA), MCL 37.1101 *et seq*. Because plaintiffs' claimed violations of the protections delineated in the PWDCRA are limited to "the sale, exchange, rental, or lease of real property, or an interest therein," and plaintiffs' request did not arise from such a transaction, the trial court properly granted defendants' motions for partial summary disposition. Therefore, finding no errors warranting reversal, we affirm.

I. BASIC FACTS[5] AND PROCEDURAL HISTORY

In 2009, Terry Romig (Terry) purchased Unit 85 of Boulder Bluff Condominiums, and she lived there with her ex-husband Robert J. Romig, (the decedent). The decedent was disabled and had limited ability to stand and walk. Consequently, in June 2016, Terry submitted an accommodation request to Gerow in accordance with the bylaws of Boulder Bluff Condominiums for permission to install a railing on the front porch and adjacent stairs of Unit 85. With the request, Terry submitted a photograph of the type and kind of railing to be installed. At the request of

---

[1] *Estate of Robert J Romig v Boulder Bluff Condominiums*, unpublished order of the Court of Appeals, entered July 29, 2019 (Docket No. 347653).

[2] *Estate of Robert J Romig v Boulder Bluff Condominiums*, unpublished order of the Court of Appeals, entered July 29, 2019 (Docket No. 348254).

[3] Plaintiff Bobbie Jo Kooman is the daughter of the decedent, Robert J. Romig, and the personal representative of his estate. Plaintiff Terry Romig is the purchaser and co-owner of the condominium where Robert J. Romig resided before his death. Defendant Boulder Bluff Condominiums, Units 73-123, 125-146, Inc., in effect, does business as Boulder Bluff Estates Condominium Association and is a Michigan non-profit corporation designed to administer the affairs of Boulder Bluff Condominiums. Gerow Management, Inc. is the corporation that serves as the property manager for the Association.

[4] For efficient administration purposes, the appeals were consolidated. *Estate of Robert J Romig v Boulder Bluff Condominiums*, unpublished order of the Court of Appeals, entered September 4, 2019 (Docket Nos. 347635; 348254).

[5] There were no depositions or affidavits filed by the parties addressing the facts in the lower court record. Accordingly, our factual summary is drawn from the complaint, the dispositive motion pleadings, and the trial court's written opinion and order.

Gerow's employee, Terry provided additional information regarding the coverage and location of the railing, the installer, and the method of attachment of the railing to the porch. She also advised that installation could occur "around July 4." While waiting for a decision from the board of directors of the Association, the decedent fell down the stairs and was hospitalized. Terry informed Gerow and the board of directors of the decedent's fall. Nonetheless, on July 1, 2016, Gerow notified Terry by letter that the board of directors denied the modification request to install a railing to the porch and stairs of Unit 85. The board denied the request because "the proposed railing would be a permanent change modifying the overall appearance of the unit in comparison to the rest of the association as well as the installation would cause damage to the concrete porch."

In a letter dated July 28, 2016, counsel for Terry and the decedent advised the Association board that they did not comply with their bylaws because the denial failed to advise of the changes necessary to permit the proposed improvement. The letter also stated that their denial was contrary to federal and state housing law, including MCL 559.147 of the Michigan Condominium Act. Counsel attached a letter from Dr. Diana Dillman advising that the decedent was disabled and needed to have side and hand rails for his safety. On August 20, 2016, the decedent fell a second time while attempting to maneuver the front porch stairs. Once again, he was hospitalized for this fall. In a letter dated August 23, 2016, Gerow advised Terry that her request to install a railing on the front porch adjacent to her unit was approved and delineated the specifications for the installation. On January 31, 2017, the decedent died.

Ultimately, plaintiffs filed a three-count complaint against defendants alleging that their delay or refusal to allow the disability modification discriminated against the decedent. Specifically, in count one and two, they alleged that defendants, in delaying or refusing the handrail, violated the PWDCRA, MCL 37.1101 *et seq*. In count three, plaintiffs alleged that defendants violated Michigan's Condominium Act, MCL 559.101 *et seq*. Gerow moved for partial summary disposition, arguing that plaintiffs did not have a cause of action pursuant to MCL 37.1506a(1)(a) or MCL 37.1502(1)(b) because both provisions of the PWDCRA required that the alleged discrimination occur "in connection with a real estate transaction." It claimed that the alleged discrimination did not occur "in connection with a real estate transaction" because Terry owned her condominium unit years before the alleged discrimination occurred. The trial court agreed with Gerow and found that this situation did not fit the PWDCRA's definition of a "real estate transaction." After the trial court granted Gerow's motion, Boulder Bluff Condominiums and the Association filed their own motion for partial summary disposition relying on the "real estate transaction" argument raised by Gerow, and the trial court granted this motion as well. Plaintiffs appeal by leave granted both orders granting defendants' motions for partial summary disposition.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is proper under MCR 2.116(C)(8) if the opposing party has failed to state a claim upon which relief can be granted. *Brickey v McCarver*, 323 Mich App 639, 641; 919 NW2d 412 (2018). A motion for summary disposition premised on MCR 2.116(C)(8) tests the legal sufficiency of the complaint by solely examining the pleadings. *Sullivan v State of Michigan*, 328 Mich App 74, 80; 935 NW2d 413 (2019). All well-pleaded factual allegations are accepted as true and construed in the light most

favorable to the nonmoving party. *Id*. A motion for summary disposition under MCR 2.116(C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly uphold a right of recovery. *Brickey*, 323 Mich App at 641-642.

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018).

### III. STATUTORY INTERPRETATION

"A decision on . . . the interpretation of a statute [is] reviewed de novo." *ADR Consultants, LLC v Mich Land Bank Fast Track Auth*, 327 Mich App 66, 74; 932 NW2d 226 (2019). Issues involving statutory interpretation present questions of law that are reviewed de novo. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 714; 909 NW2d 890 (2017). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). The most reliable evidence of legislative intent is the plain language of the statute. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. *Gardner v Dep't of Treasury*, 498 Mich 1, 6; 869 NW2d 199 (2015). The court's interpretation of a statute must give effect to every word, phrase, and clause. *South Dearborn*, 502 Mich at 361. Further, an interpretation that would render any part of the statute surplusage or nugatory must be avoided. *Id.* Common words and phrases are given their plain meaning as determined by the context in which the words are used, and a dictionary may be consulted to ascertain the meaning of an undefined word or phrase. *Id.* "In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co v City of Grand Rapids*, 399 Mich 664, 683; 252 NW2d 747 (1977). [*Le Gassick v Univ of Mich Regents*, ___ Mich App ___, ___; ___ NW2d ___ (2019), (Docket No. 344971) slip op at 4].

Additionally, statutes must be construed as a whole with the provisions read in the context of the entire statute so as to produce a harmonious whole. *Bachman v Swan Harbour Ass'n*, 252 Mich App 400, 414; 655 NW2d 415 (2002). "The last antecedent rule provides that a modifying clause is confined to the last antecedent unless something in the subject matter or dominant purpose [of the statute] requires a different interpretation." *Andrew P Campbell v Mich Dept of Treasury*, ___ Mich App ___, ____; ___ NW2d ___ (2020) (Docket No. 350248); slip op at 4 (quotation marks and citation omitted; alteration in original). "However, this rule does not apply when the modifying clause is set off by punctuation, such as a comma." *Id*. (quotation marks and citations

omitted). Additionally, "[a] dependent clause set off by commas from the rest of the sentence is not to be viewed as an independent clause operating separately but, rather, as part of the complex sentence overall." *Id*. (quotation marks and citations omitted). Furthermore, "the word 'or' is a disjunctive word that is used to indicate a disunion, a separation, an alternative." *Id*. (quotation marks and citations omitted).

## IV. PWDCRA

When this Court construes "the statutory provisions contained in the PWDCRA, [it] must construe the language reasonably, keeping in mind the purpose of the act." *Bachman*, 252 Mich App at 414. "The purpose of the PWDCRA is to ensure that all persons be accorded equal opportunities to obtain housing." *Id*. The PWDCRA "is remedial and is to be liberally construed to effectuate its ends." *Id*. However, in general, "the policy behind a statute cannot prevail over what the text actually says." *Elezovic v Ford Motor Co*, 472 Mich 408, 421-422; 697 NW2d 851 (2005).

"The PWDCRA, which was enacted in 1976 for the protection of persons with disabilities, is divided into six separate articles." *Bachman*, 252 Mich at 412. Relevant to this case, Article 5 addresses the protected area of housing. *Id*.

Plaintiffs submit that two provisions of the PWDCRA were violated in this case, MCL 37.1502(1)(b) and 37.1506a(1)(a). MCL 37.1502 prohibits certain discriminatory acts and provides in relevant part as follows:

> (1) An owner or any other person engaging in a real estate transaction, or a real estate broker or salesman shall not, on the basis of a disability of a buyer or renter, of a person residing in or intending to reside in a dwelling after it is sold, rented, or made available, or of any person associated with that buyer or renter, that is unrelated to the individual's ability to acquire, rent, or maintain property or use by an individual of adaptive devices or aids:

> \* \* \*

> (b) Discriminate against a person in the terms, conditions, or privileges of a *real estate transaction* or in the furnishing of facilities or services in connection with a *real estate transaction*. [Emphasis added].

MCL 37.1506a also prohibits certain discriminatory acts and provides in relevant part as follows:

> (1) A person shall not do any of the following in connection with a *real estate transaction*:

> (a) Refuse to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied or to be occupied by the person with a disability if those modifications may be necessary to afford the person with a disability full enjoyment of the premises. In the case of a rental, the landlord may, if reasonable, make permission for a modification contingent on the renter's

-5-

agreement to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted. [Emphasis added].

MCL 37.1501 provides definitions relevant to Article 5 of the PWDCRA, and MCL 37.1501(d) defines "real estate transaction" as "the sale, exchange, rental, or lease of real property, or an interest therein."

## V. ANALYSIS

Plaintiffs allege that the trial court erred in granting partial summary disposition to defendants because: (1) the definition of "real estate transaction" includes the phrase "an interest therein" and the condominium association's governing documents constitute "an interest therein;" (2) the trial court failed to interpret the statute as a whole; and (3) the trial court erred in determining that protections are inapplicable once a real estate purchase or exchange is complete. We disagree.

## A. CONDOMINIUM ASSOCIATION MASTER DEED AND BYLAWS

The plain language of MCL 37.1502(1)(b) precludes discrimination against a disabled person "in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with a real estate transaction." Additionally, the plain language of MCL 37.1506a(1)(a) provides that reasonable modifications cannot be refused when necessary for a disabled person's full enjoyment of premises in connection with a real estate transaction. Again, real estate transaction is defined as "the sale, exchange, rental, or lease of real property, or an interest therein." MCL 37.1501(d).

Plaintiffs submit that the condominium association's master deed provides[6] that a person who acquires an ownership interest has rights to her apartment as well as common elements, and therefore, constitute "an interest therein." Accordingly, plaintiffs assert that the master deed and bylaws satisfy the real estate transaction definition. However, plaintiffs' interpretation of the phrase "real estate transaction" is contrary to the plain language of MCL 37.1501(d). As noted, the last antecedent rule provides that a modifying clause is confined to the last antecedent, but the modifying clause "an interest therein" is separated from the last antecedent by a comma and the word "or." The comma means that the last antecedent rule does not apply in this case. See *Campbell*, ___ Mich App at ____; slip op at 4. It also demonstrates that the modifying clause "an interest therein" "is not to be viewed as an independent clause operating separately, but rather, as part of the complex sentence overall." *Id*. (quotation marks and citations omitted). Therefore, pursuant to the rules of statutory interpretation, under MCL 37.1501(d), a "real estate transaction" means the (1) "sale . . . of real property, or an interest therein," (2) "exchange . . . of real property,

---

[6] Plaintiffs rely on the following language: "Each person who shall acquire or own an Apartment in the Project (the 'Co-owner' thereof) shall have a particular and exclusive property right to his Apartment and to the limited common elements appurtenant thereto, and an undivided and inseparable right to share with other Co-owners the general common elements of the Project, as set forth in this Consolidating Master Deed."

or an interest therein," (3) "rental . . . of real property, or an interest therein," or (4) "lease of real property, or an interest therein."

Applying this interpretation of the definition of "real estate transaction" to this case, it is evident that plaintiffs do not have a cause of action under the PWDCRA. As stated earlier, plaintiffs raised a claim under MCL 37.1502(1)(b), which prohibits "[d]iscriminat[ion] against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection with a real estate transaction." The Legislature did not define the phrase "in connection with," and this Court may consult a dictionary to determine the meaning of the phrase. See *In re MJG*, 320 Mich App 310, 326; 906 NW2d 815 (2017). Although there are many definitions for the word "connection," the definition relevant in this case is "relationship in fact." *Merriam-Webster's Collegiate Dictionary* (11th ed). See also *MJG*, 320 Mich App at 326.

In this case, the alleged discrimination did not have a relationship in fact with a real estate transaction because the alleged discrimination did not pertain to the (1) "sale . . . of real property, or an interest therein," (2) "exchange . . . of real property, or an interest therein," (3) "rental . . . of real property, or an interest therein," or (4) "lease of real property, or an interest therein." MCL 37.1501(d). Additionally, defendants did not allegedly discriminate against the decedent "in the terms, conditions, or privileges of a," (1) "sale . . . of real property, or an interest therein," (2) "exchange . . . of real property, or an interest therein" (3) "rental . . . of real property, or an interest therein," or (4) "lease of real property, or an interest therein." MCL 37.1501(d). Instead, the alleged discrimination occurred years after Terry purchased the home and after the decedent began residing in the home.

Plaintiffs also raised a claim in their complaint pursuant to MCL 37.1506a(1)(a), which prohibits certain discriminatory acts "in connection with a real estate transaction." However, as stated earlier, the alleged discriminatory act did not have a relationship in fact with the (1) "sale . . . of real property, or an interest therein," (2) "exchange . . . of real property, or an interest therein," (3) "rental . . . of real property, or an interest therein," or (4) "lease of real property, or an interest therein." MCL 37.1501(d). The alleged discriminatory act occurred years after Terry had purchased Unit 85 from Boulder Bluff Condominiums.

## B. STATUTE AS A WHOLE AND COMPLETED TRANSACTIONS

Plaintiffs also contend that the statute must be examined as a whole and limiting its protections to instances of sales or leases negates the remedial "value" of the PWDCRA and renders the statute meaningless or nugatory. However, it must be noted that defendants did not seek summary disposition of count three, plaintiffs claimed violation of MCL 559.147a of the Michigan Condominium Act. The following rules address statutes that relate to the same subject matter:

> When two or more statutes arguably relate to the same subject or have the same purpose, the statutes are deemed *in pari materia* and must be read together in order to discern legislative intent. *Measel v Auto Club Group Ins Co*, 314 Mich App 320, 329 n 7; 886 NW2d 193 (2016). The purpose of the rule of *in pari materia* is to effectuate the legislative goal as evinced by the harmonious statutes on a particular

subject. *Id.* "When two statutes are *in pari materia* but conflict with one another on a particular issue, the more specific statute must control over the more general statute." *Donkers v Kovach*, 277 Mich App 366, 371; 745 NW2d 154 (2007). "It is . . . well established that a later-enacted specific statute operates as an exception or a qualification to a more general prior statute covering the same subject matter and that, if there is an irreconcilable conflict between two statutes, the later-enacted one will control." *In re Midland Publishing Co, Inc*, 420 Mich 148, 163; 362 NW2d 580 (1984). These are statutory-construction doctrines designed to discern the intent of the Legislature. [*House of Representatives v Governor*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 353655), slip op at 13].

MCL 559.147a(1) addresses improvements or modifications pertaining to persons with disabilities and provides, in pertinent part:

> A co-owner may make improvements or modifications to the co-owner's condominium unit, including improvements or modifications to common elements and to the route from the public way to the door of the co-owner's condominium unit, at his or her expense, if the purpose of the improvement or modification is to facilitate access to or movement within the unit for persons with disabilities who reside in or regularly visit with unit, or to alleviate conditions that could be hazardous to persons with disabilities who reside in or regularly visit the unit.

Although plaintiffs urge this Court to extend the protections of the PWDCRA beyond the "sale, exchange, rental, or lease of real property, or an interest therein," MCL 37.1501(d), "we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Le Gassick v Univ of Mich Regents*, ___ Mich App at slip op 4, quoting *Frost-Pack Distrib Co*, 399 Mich at 683. Moreover, provisions of the PWDCRA arguably overlap with MCL 557.147a(1) of the Michigan Condominium Act and must be read together to discern legislative intent. MCL 557.147a(1) expressly affords persons with disabilities the right to make improvements or modifications to facilitate access to or movement in the unit.[7] It contains no express limitations or correlation to a "real estate transaction" or the timing of the sale or purchase. Thus, the Legislature's confinement of housing provisions in the PWDCRA to "real estate transactions" does not preclude subsequent legal action after a disabled person completes the real estate transaction in light of MCL 557.147a, and we will not extend the application of the PWDCRA beyond real estate transactions because it would serve the rationale purpose of protecting a disabled person.

Therefore, the trial court did not err by granting partial summary disposition in favor of defendants. Plaintiffs do not have any claims arising under the PWDCRA.

---

[7] To be clear, we do not address the merits of whether plaintiffs factually satisfy a claim pursuant to MCL 557.147a(1) or the application of that law to these facts.

Affirmed. No taxable costs, a public question being involved.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ James Robert Redford